Argued March 4, affirmed October 16, 1975

K-LINES, INC., *Appellant, v.* ROBERTS MOTOR COMPANY ET AL, *Respondents.*

541 P2d 1378

*Larry N. Sokol,* Portland, argued the cause for appellant. With him on the briefs were Franklin, Bennett, Ofelt & Jolles, P.C., Portland.

*E. Richard Bodyfelt,* Portland, argued the cause for respondents. With him on the brief were Tooze, Kerr, Peterson, Marshall & Shenker and Bullivant, Wright, Leedy, Johnson, Pendergrass & Hoffman and Darrel L. Johnson, Portland.

Holman, J., did not participate in this decision.

DENECKE, J.

This is a products liability case in which the trial court held for the defendants because they contracted with the plaintiff to limit their liability.

The plaintiff brought this action to recover for damages to its truck and trailers. The defendant Paccar manufactured the truck. Apparently, Paccar did business by the name "Kenworth Motor Truck Company." Kenworth's distributor, the defendant Roberts Motor Company, sold the truck to the plaintiff. Plaintiff contends that a defect in the truck caused the damage. The trial court granted defendants' motion for an involuntary nonsuit.

The plaintiff brought its action on the theory of § 402A, 2 Restatement (Second) 356, Torts; that is, strict liability in tort. We affirm the trial court's ruling for the defendants on the same reasoning used by the trial court.[1]

The plaintiff bought five truck-tractors from the defendant Roberts Motor Company for $93,000.[2] About a year and one-half later, after one of the trucks had been driven 113,000 miles, the truck failed to make a curve, went off the freeway, and incurred the damage. Plaintiff contends this damage was caused by a defective assembly connecting the fifth wheel to the truck.

The defendants alleged as an affirmative defense that the parties to the sale contracted to limit the defendants' liability to repairs and replacement of defective parts and excluded any further liability.

---

[1] The defendants also contended that § 402A, 2 Restatement (Second) Torts, is not applicable to a commercial property damage action between business concerns. We do not pass upon that contention.

[2] The trucks were purchased by two individuals who leased them to their corporation, the plaintiff. Plaintiff makes no point of this. Plaintiff is bringing this action as a subrogee to the rights of the individual purchasers.

At trial the plaintiff introduced into evidence a document entitled, "WARRANTY and OWNERS SERVICE POLICY." A portion of this document provides as follows:

"Kenworth Motor Truck Company hereby warrants only to the original purchaser (Buyer) from Selling Distributor during the period of time and upon the conditions hereinafter set forth each new motor vehicle sold by it to be merchantable, free from defects in material and workmanship under normal use, maintenance and service. Except for the above warranty, it is expressly agreed that NO WARRANTY OF FITNESS FOR PARTICULAR PURPOSE, nor other warranty expressed, implied or statutory is made by Kenworth or the Selling Distributor.

"Kenworth's liability shall be limited to repair or replacement, including labor, at its factory or authorized distributor, of any part or parts which Kenworth's examination shall disclose to its satisfaction to have been defective in material or workmanship under normal use, maintenance and service, in accordance with the warranty schedule on the reverse hereof.

"* * * * *.

"The foregoing shall be Buyer's sole and exclusive remedy whether in contract, tort or otherwise, and Kenworth shall not be liable for injuries to persons or property.

"In no event shall Kenworth be liable for incidental or consequential damages or commercial losses nor for any other loss or damage except as above set forth.

"* * * * *."

Plaintiff contends:

"* * * [A] disclaimer/limitation of remedy clause in a warranty is ineffective to disclaim strict tort liability. * * *."

Plaintiff supports his argument by reference to Comment *m.* of 2 Restatement (Second) 356, Torts, § 402A, as follows:

> "* * * The rule stated in this Section is not governed by the provisions of the Uniform Sales Act, or those of the Uniform Commercial Code, as to warranties; and it is not affected by limitations on the scope and content of warranties, or by limitation to 'buyer' and 'seller' in those statutes. Nor is the consumer required to give notice to the seller of his injury within a reasonable time after it occurs, as is provided by the Uniform Act. The consumer's cause of action does not depend upon the validity of his contract with the person from whom he acquires the product, *and it is not affected by any disclaimer or other agreement, whether it be between the seller and his immediate buyer, or attached to and accompanying the product into the consumer's hands.* In short, 'warranty' must be given a new and different meaning if it is used in connection with this Section. It is much simpler to regard the liability here stated as merely one of strict liability in tort." (Emphasis added.)

█ There has been some confusion about the distinction between disclaimers of warranties and exclusion or limitation of remedies. In our opinion, the two are substantially identical. Disclaimers, we believe, grew up as a contractual modification of warranties which would otherwise flow, by operation of law or interpretation of the agreement, to the purchaser. Comment *m.* to Restatement (Second) § 402A was meant to explain that such garden variety disclaimers were not sufficient to disclaim the strict liability established by 402A because 402A was not based on warranty. It means simply that a disclaimer of *"warranties"* is not sufficient to affect strict liability in tort. We do not take it to mean that an agreement to bar all tort remedies is treated the same, regardless of

whether such agreement is denominated a disclaimer, exclusion or limitation.

The Third Circuit, applying Pennsylvania law, held Comment *m.*, § 402A, did not apply to contract limitations on tort liability. In *Keystone Aeronautics Corp. v. R. J. Enstrom Corp.*, 499 F2d 146 (3d Cir 1974), a business concern bought used helicopters from a helicopter manufacturer. The buyer brought an action to recover property damage sustained when one of the helicopters crash landed. The contract of purchase could be construed that the manufacturer was released from all liability whether in contract or tort except to replace defective parts. Recovery was sought on the theories of negligence and strict liability. The court held:

> "We conclude therefore that Pennsylvania law does permit a freely negotiated and clearly expressed waiver of § 402A between business entities of relatively equal bargaining strength. * * *."
> 499 F2d at 149.

The Fifth Circuit similarly held, applying California law, in *Delta Air Lines, Inc. v. McDonnell Douglas Corporation*, 503 F2d 239 (5th Cir 1974).

The Tenth Circuit held to the contrary in *Sterner Aero AB v. Page Airmotive, Inc.*, 499 F2d 709 (10th Cir 1974).

In a very recent analysis of these three cases the author concluded:

> "The issue of whether strict tort can and should apply to property damage suffered by a commercial buyer in privity of contract with the seller where the parties have clearly attempted to exclude that liability by agreement, is both difficult and in doubt. Three federal courts have assumed that strict tort can apply. Importantly, two have held that a disclaimer could be effective even if

strict tort, rather than the Code, controls. That position is surely preferable. * * *." McNichols, *Strict Tort Disclaimers,* 28 Okla L Rev 494, 528-529 (1975).

Plaintiff and defendant in this case have agreed to a sole limited remedy for defects. That agreement purportedly bars all other remedies including the remedy sought by the plaintiff. The only question left for decision is whether such an agreement is valid in the circumstances of this case.

■ Agreements to exonerate a party from liability or to limit the extent of the party's liability for tortious conduct are not favorites of the courts but neither are they automatically voided. The treatment courts accord such agreements depends upon the subject and terms of the agreement and the relationship of the parties.

In *Irish & Swartz Stores v. First Nat'l Bk.,* 220 Or 362, 349 P2d 814 (1960), we examined the law in this field. The plaintiff allegedly deposited money in defendant's night depository but the money was never found or accounted for. The written deposit agreement signed by the plaintiff completely exonerated the defendant bank from any liability. While the agreement did not expressly include exoneration for tort, the court's discussion indicates it construed the agreement to include exoneration from tort liability. We commented:

"There is nothing inherently bad about a contract provision which exempts one of the parties from liability. The parties are free to contract as they please, unless to permit them to do so would contravene the public interest. * * *." 220 Or at 375.

We held:

"* * * [W]e are of the opinion that the pe-

culiar character of the bailment bargained for in the present case warrants the recognition of an enforceable exculpatory clause. * * *." 220 Or at 377.

We quoted with approval § 574 of 2 Restatement, Contracts, which provides:

"A bargain for exemption from liability for the consequences of negligence not falling greatly below the standard established by law for the protection of others against unreasonable risk of harm, is legal except in the cases stated in § 575." 2 Restatement, Contracts, at 1079-1080. (Section 575 is not applicable to the present case.)

The comment to this section states:

"By negligence is meant any conduct not recklessly disregardful of the interests of others which falls below the standard established by law for the protection of others against unreasonable risk of harm. By gross negligence is meant conduct falling greatly below that standard." 2 Restatement, Contracts, supra, at 1080.

■ In considering this section of the Restatement permitting exemption from liability for the consequences of negligence, it should be remembered that strict liability in tort imposes liability without proof of negligence.

Harper and James term an agreement limiting the recovery or completely exonerating the party, an "express assumption of risk." They state:

"There is no general legal prohibition against express agreements to assume risks. * * *." 2 Harper and James, 1185 (1956).

In *Velez v. Craine & Clark Lumber Corp.*, 33 NY2d 117, 350 NY Supp2d 617, 305 NE2d 750 (1973), the court commented about the exact question we have

here; that is, whether a party can limit its liability for strict liability in tort. The court commented:

> "We are then thrown back on broad principles of contract law. Although strict products liability sounds in tort rather than in contract, we see no reason why in the absence of some consideration of public policy parties cannot by contract restrict or modify what would otherwise be a liability between them grounded in tort." 305 NE2d at 754.

In *Rawlings v. Layne & Bowler Pump Company,* 93 Idaho 496, 465 P2d 107 (1970), the farmer-plaintiff bought irrigation pumping machinery from the defendant pump company. The contract of sale provided that the seller was not to be held liable for any consequential damage arising from any cause, including seller's negligence. The plaintiff brought action for negligent installation of the pump, alleging that he suffered crop loss because of such negligence. The court held against the plaintiff and stated:

> "Appellant contends that it is against public policy to allow a person to contract away his legal rights and remedies for future negligence. This rule is not absolute, and in the opinion of this Court is more realistically viewed as an exception rather than the general rule which prevails throughout the majority of American jurisdictions. Freedom of contracts is a fundamental concept underlying the law of contracts, and is an essential element of the free enterprise system. * * *." 93 Idaho at 499.

To the same effect see *Southwest Forest Indus., Inc. v. Westinghouse Elec. Corp.,* 422 F2d 1013 (9th Cir 1970), and *Delta Air Lines, Inc. v. Douglas,* 238 Cal App2d 95, 47 Cal Rptr 518 (1965).[9]

---

[9] One author appears to believe that the court in Delta Air Lines, Inc. v. Douglas, 238 Cal App2d 95, 47 Cal Rptr 518 (1965), was confused in upholding the "disclaimer." Rishe, *Products Liability Meets the Disclaimer: Distorted Concepts,* 12 S Tex L J 137, 149-150 (1970). If we are correct, the author has confused disclaimer of warranty and limitation of remedies.

Plaintiff, in effect, argues that if the terms of the agreement in this case are construed so as to bar the plaintiff from maintaining an action in strict liability in tort, the agreement should be held void as against public policy.

As stated in previous authorities, this kind of agreement is sometimes voided as being against public policy. In *Voyt v. Bekins Moving & Storage,* 169 Or 30, 119 P2d 586, 127 P2d 360 (1942), we invalidated a limitation of liability provision in a warehouse receipt.

In one of the famous products liability cases, *Henningsen v. Bloomfield Motors, Inc.,* 32 NJ 358, 161 A2d 69, 75 ALR2d 1 (1960), the New Jersey court declared a disclaimer of warranty agreement void as against public policy. The contract in that case was for the sale of a passenger car to a buyer who suffered personal injury because of a defect.

As we indicated earlier, however, all provisions for limitation of liability are not held to be contrary to public policy and, therefore, invalid.

Plaintiff admits that the transaction was between business persons, made in a commercial setting and without fraud. Plaintiff contends, however, that the agreement is invalid as against public policy for four reasons: (1) the parties did not have equal bargaining power; (2) the contract was one of adhesion; (3) the limitation of liability terms were confusing and ambiguous; and (4) there was no evidence that the limitation terms were reached by bargaining. (These four different arguments may all amount to an argument that the contract was one of adhesion.)

Answering the claim of ambiguity and confusing provisions may illuminate the answer to some of the other contentions. As we previously set out, one document is captioned, "WARRANTY and OWNERS SERVICE POLICY." The language we previously

quoted about limitation of remedy is in easily readable type. The terms are those frequently found in such agreements. Its restriction of the buyer's remedy to repair and replacement of parts is common.

The "WARRANTY and OWNERS SERVICE POLICY" is printed on an 8½ x 11 inch sheet of paper. It was signed by someone on behalf of the buyers. The other side of the sheet is a "Warranty Schedule." The schedule has a detailed but clear explanation of the warranty providing for the repair and replacement of parts. For example, for a transmission defect occurring within the first 10 months or the first 10,000 miles, whichever comes first, the buyer is entitled to receive 100 per cent of the parts and labor. If the defect in the transmission occurs within 12 months, but after the truck has gone more than 90,000 miles but less than 100,000 miles, buyer is entitled to receive only 10 per cent of the cost of parts and labor. The schedule varies depending upon the part involved.

Another printed document entitled, "PRE-DE-LIVERY INSPECTION AND WARRANTY RECORD," has typed near the bottom, "The Warranty Certificate presented and its function explained to the owner/operator. Signed X  Steve Berrey  [one of the purchasers]."

■ We are of the opinion, as was the trial court, that as a matter of law the limitation of liability provisions were not ambiguous or confusing.

■ As to unequal bargaining power between the parties, we are of the opinion also that as a matter of law that has not been shown. Disparity in bargaining power does not exist when the only evidence is that the buyer is a truck line purchasing five trucks for $93,000 and the other contracting parties are a truck manufacturer and a truck distributor.

■ That one party may possess greater financial

resources than the other is not proof that such a disparity of bargaining power exists that a limitation of liability provisions should be voided. *K & C, Inc. v. Westinghouse Electric Corporation,* 437 Pa 303, 263 A2d 390 (1970), so held on comparable facts. The buyer was K & C, Inc., which was operated by an attorney and a man with experience as a rooming house landlord and in the used furniture and appliance field. The defendant, Westinghouse, of course, is one of the large national corporations. The buyers bought four coin-operated dry cleaners. They brought an action claiming defects. Westinghouse raised the defense that the parties had agreed that any recovery by the buyers would be limited to the repair or replacement of parts and no consequential damages would be paid. The buyers claimed that this agreement was unconscionable. Under the Uniform Commercial Code, in Oregon ORS 72.7190, the court rejected this contention, observing:

> "\* \* \* [I]t is clear that the exclusion was not conscionable here, where the buyer was hardly the sheep keeping company with wolves that it would have us believe. \* \* \*." 437 Pa at 308.

██ When the parties are business concerns dealing in a commercial setting and entering into an unambiguous agreement with terms commonly used in commercial transactions, the contract will not be deemed a contract of adhesion in the absence of evidence of unusual circumstances.

Plaintiff contends the trial court could not find the limitations were valid as a matter of law because there was no evidence of bargaining by the parties about the terms of the limitations provision.

The plaintiff apparently believes that there must be explicit evidence that there were offers and counter-offers on the limitation terms or comparable evidence of "haggling."

■ We do not believe such evidence is necessary. The following statement is more accurate in describing the absence of bargaining which would render a limitation agreement invalid:

"* * * The limitation must be a part of the parties' bargain in fact. If it is contained in a p r i n t e d  c l a u s e which was not conspicuous or brought to the buyer's attention, the seller had no reasonable expectation that the buyer understood that his remedies were being restricted to repair and replacement. As such, the clause cannot be said to be a part of the bargain (or agreement) of the parties." Nordstrom, Law of Sales, 276, § 89 (1970).

■ We hold that as applied to the facts of this case, the limitation provisions are not invalid as being contrary to public policy.[4]

Affirmed.

---

[4] Under the Uniform Commercial Code, ORS 72.7190, the limitation on liability would be valid. ORS 72.7190 provides:

"Contractual modification or limitation of remedy. (1) Subject to the provisions of subsections (2) and (3) of this section and of ORS 72.7180 on liquidation and limitation of damages:

"(a) The agreement may provide for remedies in addition to or in substitution for those provided in ORS 72.1010 to 72.7250, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts; and

"(b) Resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

"* * * * *

"(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not."

The official comment states:

"Under this section parties are left free to shape their remedies to their particular requirements and reasonable agreements limiting or modifying remedies are to be given effect."