R&G Properties v. Column Financial, No. S0566-03 CnC (Katz, J., May 5, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                                        SUPERIOR COURT
Chittenden County, ss.:                            Docket No. S0566-03CnC

R & G PROPERTIES

v.

COLUMN FINANCIAL

ENTRY

Column, which originated the loan at the heart of this dispute, seeks dismissal from this case for lack of any relation to the claims which might support party status.

From its perspective, Column originated the loan, and then sold it to its parent corporation. The parent corporation then pooled the loan with others and deposited them into a type of trust known as a Real Estate Mortgage Investment Conduit. Interests in the trust were sold by public offering or private placement. Defendant Wells Fargo now is trustee, and Defendant GMAC services the loan. Since selling the loan to its parent, Column has had no interest, ownership or otherwise, in the loan, or other relationship with Plaintiff. Consequently, Column sees no role for itself in this case.

Nevertheless, Plaintiff says its complaint sets out claims against Column characterized as "Breach of Contract, Commercial Unreasonableness, and Restraint of Alienation," which arose, as a factual matter, prior to Column's sale of the loan. Plaintiff summarizes the intended basis for these claims better than the court can: "A secured creditor 'must proceed in a commercially reasonable manner.' [citing 9A V.S.A. § 9-502(2)] Plaintiff contends it is commercially unreasonable to incorporate illegal or unenforceable terms into a contract of adhesion, such that Plaintiff is later subject to consequential damages flowing from attempted enforcement of prohibitive and illegal terms."

We note at the outset that 9A V.S.A. § 9-502(2), effective at the time of the loan (now § 9-607(c)), relates to commercial reasonableness in how a secured creditor undertakes to dispose of a debtor's collateral. The "illegal" terms of which Plaintiff complains, however, relate to the terms of prepayment and the release of collateral, nothing within the scope of § 9-502(2). This section does not permit broad rewriting of commercial contracts to accord with what may be a court's ideas of how to structure commercial loans. See Downtown Barre Dev. v. C & S Wholesale Grocers, Inc., 2004 VT 47, ¶ 14 (court not free to rewrite contract).

In any event, the terms to which Plaintiff objects are not "illegal" because the loan agreement is adhesive. An adhesive contract is not necessarily either illegal, Western Pacific Mut. Ins. Co. v. Davies, 601 S.E.2d 363, 369 n.5 (Ga. Ct. App. 2004), or unconscionable, Petersen-Gonzalez v. Garcia, 86 P.3d 210, 214 (Wash. Ct. App. 2004). Contracts of adhesion typically are construed strictly against the drafter. However, this and related principles typically are employed to protect consumers lacking bargaining power from abusive provisions in form contracts not susceptible of any negotiation at all. Black's Law Dictionary 318-19 (7th ed. 1999). "When the parties are business concerns dealing in a commercial setting and entering into an unambiguous agreement with terms commonly used in commercial transactions, the contract will not be deemed a contract of adhesion in the absence of evidence of unusual circumstances." K-Lines, Inc. v. Roberts Motor Co., 541 P.2d 1378, 1384 (Or. 1975). We perceive

2

no such unusual circumstances here and Plaintiff makes no showing of any. Rather, Plaintiff requests the opportunity to prove to a jury the subjective reasonableness of the allegedly mistaken impressions of one its principals. We see no relevance of that kind of scrutiny in a dispute such as this, over an unremarkable, arms length commercial loan agreement. Again, we cite Downtown Barre Dev., 2004 VT 47, ¶ 14.

Plaintiff also objects to its inability under the loan agreement to obtain the partial release of collateral by partial prepayment of the debt. Plaintiff characterizes this as an illegal "restraint on alienation," arguing that the agreement has the effect of absolutely barring any conveyance at all of the properties pledged as collateral, at least in combination with 10 V.S.A. § 6242. That statute affords residents of mobile home parks what amounts to a right of first refusal prior to the sale of their park. More specifically, Plaintiff says that it is effectively unable to sell one park unless it sells all five, but simultaneous compliance with 10 V.S.A. § 6242 for five parks is impossible. Therefore, concludes Plaintiff, the loan agreement absolutely bars the "alienation" of any one of the parks pledged as collateral for the entire length of the loan agreement, ten years.

The agreement provides prepayment penalties, permitted under 9 V.S.A. § 46, and allows the release of collateral on compliance with defeasance conditions the legality of which Plaintiff does not specifically challenge. The agreement does not actually bar the conveyance of parks pledged as collateral. Plaintiff nowhere distinguishes its claimed unreasonable restraint on alienation from the lender's reasonable effort at preserving the benefit of the bargain. Even if compliance with 10 V.S.A. § 6242 increases the difficulty for this plaintiff in releasing this collateral in these circumstances, still we perceive no unreasonable restraint on alienation. Plaintiff is not vested with some higher right to alienate property after agreeing unambiguously to some restraints on alienation. Plaintiff makes no showing that the restraints in the agreement are unreasonable. Its argument reduces to the ipso facto claim that the restraint necessarily is unreasonable because it believes it has no ability to alienate in fact. Additionally, reading the Mobile Home Parks Act to bar the sort of

3

commercial lending provisions involved here would pressure lenders with onerous lending requirements, presumably resulting in a substantially more difficult financing environment for buyers and sellers of mobile home parks. We find in the Act no intent of the Legislature to do any such thing.

Lastly, Plaintiff argues that the loan agreement is unenforceable because Column lacked a license to lend. Specifically, Plaintiff interprets 8 V.S.A. § 2201(a) to require all lenders in the world, no matter where or to whom loans are made, to be licensed by Vermont's Commissioner of Banking, Insurance, Securities, and Health Care Administration. Hence, says Plaintiff, even though § 2201(c)(9) exempts from the license requirement lenders only making commercial loans in excess of one million dollars, and Column only made loans in excess of one million dollars in the relevant year in Vermont, Column was required to be licensed anyway because it presumably made loans of less than one million dollars somewhere in the world outside of Vermont. We suspect that by enacting § 2201 the legislature did not expect to be endowing the commissioner with such super-regulatory powers. Surely such powers would have been challenged long before now, and on constitutional grounds. As the Vermont Supreme Court made amply clear a long time ago, "[i]t is not doing business in the State to make outside the State a loan . . . ." Siwooganock Guaranty Sav. Bk. v. Cushman, 109 Vt. 221, 247 (1937). We decline to read 8 V.S.A. § 2201 to require lending licenses of lenders operating only in other states and countries.

Plaintiff also has filed a motion to dismiss GMAC's counterclaim as insufficiently pled. If the counterclaim is truly incomprehensible, Plaintiff has resort to a motion for more definite statement. More likely, it is entitled to additional discovery. Otherwise, we think notice pleading requires no more factual specificity than present in the unamended counterclaim.

Column's motion seeking dismissal from this case as a party-defendant is granted. R & G's motion to dismiss the counterclaim is denied. R & G's motion regarding 8 V.S.A. § 2201 is denied; GMAC's motion on the same issue is granted.

4

Dated at Montpelier, Vermont, _____, 20___.


_____
Judge