Argued and submitted March 21, 2016, affirmed March 8, petition for review denied July 20, 2017 (361 Or 671)

Neal KASTE
and Nancy Kaste, dba Hightide Holsteins,
*Plaintiffs-Respondents,*

*v.*

LAND O'LAKES PURINA FEED, LLC,
a foreign limited liability company,
dba Land O'Lakes Feed,
*Defendant-Appellant.*

Tillamook County Circuit Court
092124; A156764

392 P3d 805

Brad S. Daniels argued the cause for appellant. With him on the briefs was Stoel Rives LLP.

Brian R. Talcott argued the cause for respondents. With him on the brief was Dunn Carney Allen Higgins & Tongue LLP.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Wollheim, Senior Judge.

**LAGESEN, J.**

Plaintiffs Neal and Nancy Kaste operate a dairy farm in Tillamook County, and contracted with defendant, Land O'Lakes Purina Feed LLC, to provide them with feed for their dairy cows. That feed sickened a number of plaintiffs' cows and killed others, causing plaintiffs to incur veterinary expenses to care for the cows as well as other losses. Plaintiffs sued defendant, alleging two contract claims and two tort claims: breach of contract; breach of warranty; negligence; and strict products liability. A jury found for plaintiffs on all claims, awarding them $89,197.73 on the contract and warranty claims, and $750,000 on the tort claims. Because the complaint alleged total damages in the amount of $750,000, the trial court entered a general judgment for a total of $750,000, allocating $89,197.73 to the contract and warranty claims, and $660,802.27 to the tort claims.[1] The court subsequently entered a supplemental judgment awarding plaintiffs their attorney fees. On appeal from those judgments, defendant contends that the trial court erred in four respects: (1) by permitting plaintiffs' contract and warranty claims to go to the jury because, in defendant's view, plaintiffs did not adequately plead or prove recoverable contract damages; (2) by concluding that the parties' contract did not, as a matter of law, bar plaintiffs from recovering damages on their tort claims or limit the amount that they could recover on those claims; (3) by not requiring plaintiffs to elect between recovering on their tort claims or their contract claims; and (4) by granting plaintiffs leave to amend their complaint to assert entitlement to attorney fees. For the reasons that follow, we conclude that the trial court did not err in the manners claimed and, accordingly, affirm the judgments of the trial court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are dairy farmers in Tillamook County. They entered into a one-year sales contract with defendant

---

[1] ORCP 67 C provides, in relevant part: "A judgment for relief * * * exceeding the amount prayed for in the pleadings may not be rendered unless reasonable notice and opportunity to be heard are given to any party against whom judgment is to be entered."

for the purchase of feed for their dairy cows. Defendant prepared the written contract and Neal Kaste signed it. Under the terms of the agreement, defendant agreed to deliver monthly shipments of feed meeting certain specifications. Pertinent to the central issues on appeal, the contract also discussed warranties and limitations on defendant's liability, providing:

> "EXCLUSIONS OF WARRANTIES: LAND O'LAKES WARRANTS THAT THE PRODUCTS SOLD HEREUNDER MEET THE DESCRIPTION AS SET FORTH ON THE FRONT OF THIS CONTRACT. THERE ARE NO OTHER WARRANTIES, EXPRESS, IMPLIES [sic], STATUTORY, OR ARISING FROM COURSE OF DEALING OR USAGE OF THE TRADE, OF QUALITY, FITNESS FOR PURPOSE, CAPACITY, DESCRIPTION OR OTHERWISE OF THE PRODUCTS SOLD HEEUNDER [sic]. SELLER [sic] WAIVES ALL CLAIMS FOR BREACH OF WARRANTY OR FOR FAILURE OF THE PRODUCTS SOLD HEREUNDER UNLESS MADE IN WRITING AND DELIVERED TO LAND O'LAKES WITHIN 10 DAYS AFTER RECEIPT OF THE PRODUCT. LAND O'LAKES SHALL IN NO EVENT BE LIABLE TO BUYER FOR CONSEQUENTIAL DAMAGES; AND LAND O'LAKES LIABILITY FOR DAMAGES SHALL IN NO EVENT EXCEED THE PURCHASE PRICE OF THE PARTICULAR SHIPMENT WITH RESPECT TO WHICH A CLAIM IS MADE."

(Underscoring and capitalization in original.)

At some point after beginning the dairy cows on defendant's feed, plaintiffs noticed problems within their herd. Some cows died, and many other cows suffered from a variety of health problems that interfered with their ability to produce milk. As a result, plaintiffs incurred expenses to care for their ailing cows, as well as losses to their business. Plaintiffs determined that defendant's feed was causing their cows' health problems and filed this civil action seeking $750,000 in damages against defendant, alleging claims for breach of contract, breach of express and implied warranties, negligence, and strict products liability.

At trial, plaintiffs' theory was that harmful levels of proteins, phosphorous, and copper in the delivered feed had

caused harm to their herd. They sought to recover a range of damages incurred as a result of the harm to their herd. They also sought to recover the difference in value between the feed that defendant had provided them and feed that would have complied with the parties' contractual standards.

At the close of plaintiffs' case, defendant moved for a directed verdict. Defendant's primary argument in support of that motion was that the contractual provision regarding warranties and damages limitations precluded plaintiffs from recovering any damages resulting from their cows' consumption of the feed, regardless of whether plaintiffs sought those damages in contract or in tort. Defendant asserted that the limitation on recovery of consequential damages precluded plaintiffs from obtaining any relief on their tort claims because, in defendant's view, all tort damages sought by plaintiffs qualified as "consequential damages" under the contract. As to the contract claims, defendant also argued that plaintiffs had failed to present any evidence of damages apart from consequential damages. Therefore, defendant argued, it was entitled to a directed verdict on all of plaintiffs' claims. Alternatively, defendant contended that the contractual provision limited the total damages that plaintiffs could recover on both the tort claims and the contract claims.

The trial court denied the motion for a directed verdict. It concluded that the provision limiting damages was ambiguous as to whether it applied to plaintiffs' tort claims and, for that reason, did not operate as a matter of law to bar or limit plaintiffs' recovery on those claims. The court agreed with defendant that the contractual limitation on damages barred plaintiffs from recovering more than the purchase price of the feed on their contract claims. The court also agreed that the provision barred plaintiffs from recovering consequential damages on their contract claims, but denied defendant's motion for a directed verdict on the contract claims because it determined that plaintiffs had presented evidence that would permit a jury to find that plaintiffs incurred damages other than consequential damages as a result of defendant's breach of contract.

The jury found for plaintiffs on all four claims. It awarded them $89,197.73 for breach of contract and breach

of warranty, and $750,000 for negligence and strict products liability. The court noted that plaintiffs sought $750,000 in the complaint and capped the total recovery at that amount. The court then allocated that award between the two claims, reducing the recovery under the tort theories by the $89,197.73 awarded by the jury on the contract claims, and entering a general judgment for $750,000. In doing so, the court rejected defendant's contention that plaintiffs were required to elect between recovering on their tort claims and recovering on the contract claims.

The court then entertained plaintiffs' petition for attorney fees and entered a supplemental judgment awarding plaintiffs $762,283.41 in attorney fees. Although plaintiffs initially did not plead an entitlement to attorney fees in the complaint, during trial the court granted plaintiffs leave to amend the complaint to assert a right to recover attorney fees.

Defendant appeals. As noted, defendant contends that the trial court erred in the following four respects: (1) by denying its motion for a directed verdict on plaintiffs' contract and warranty claims; (2) by concluding that the parties' contract did not, as a matter of law, bar plaintiffs from recovering damages on their tort claims or limit the amount that they could recover on those claims, and in denying defendant's motion for a directed verdict as to the tort claims based on that conclusion; (3) by granting plaintiffs leave to amend their complaint to assert entitlement to attorney fees; and (4) by not requiring plaintiffs to elect between recovering on their tort claims or their contract claims.

## II. ANALYSIS

### A. *Directed Verdict Issues*

We start with defendant's contentions that it was entitled to directed verdicts on all of plaintiffs' claims. We review a trial court's denial of a directed verdict motion by viewing the evidence in the light most favorable to the non-moving party and determining whether the moving party was entitled to judgment as a matter of law. *Mauri v. Smith*, 324 Or 476, 479, 929 P2d 307, *cert den*, 519 US 813 (1996);

*Najjar v. Safeway, Inc.*, 203 Or App 486, 489-90, 125 P3d 807 (2005).

### 1. *Directed verdict on contract claims*

Defendant's contention that it was entitled to a directed verdict on plaintiffs' contract claims—that is, the breach of contract claim and the breach of warranty claim—is predicated on the provision in the parties' contract stating that "LAND O'LAKES SHALL IN NO EVENT BE LIABLE TO BUYER FOR CONSEQUENTIAL DAMAGES." (Capitalization in original.) Defendant argues that the only damages alleged in the complaint were consequential damages and that, at trial, plaintiffs put on evidence only of consequential damages and not of direct damages. Defendant further argues that, for either or both of these reasons, the trial court should have directed a verdict in its favor on plaintiffs' contract claims.

Both arguments fail. Defendant's arguments about the sufficiency of the pleadings did not provide grounds for entry of a directed verdict. As plaintiffs point out,

"[t]he rule in Oregon is that when objection to the legal sufficiency of a pleading is first made at trial, where the defect in the pleading, even though material, consists of an omission to state a necessary fact and it appears that the necessary fact could have been added by amendment, the entire record will be examined. The determination of the sufficiency of the pleading is then made by looking at the sufficiency of the evidence to establish the claim rather than the sufficiency of the pleading."

*Davis v. Tyee Industries, Inc.*, 295 Or 467, 483, 668 P2d 1186 (1983). Here, even if we assume without deciding that plaintiffs insufficiently alleged that they had suffered damages from defendant's breach of contract apart from consequential damages, that is a defect that they could have cured by amendment. *See* ORCP 23 B (allowing parties to amend pleadings to conform to the evidence introduced at trial when amendment is not prejudicial to the objecting party). Accordingly, we examine the entire record to determine whether the evidence plaintiffs presented was sufficient to establish those damages.

That leads us to defendant's argument that the evidence was not sufficient to permit the jury to find that plaintiffs had suffered any damages from defendant's breach apart from consequential damages. Our review of the record persuades us otherwise. Plaintiffs presented evidence that they paid the bills for the feed that they were promised, but received inferior feed that was toxic to their cows. From that evidence, the jury permissibly could find that plaintiffs had been damaged in an amount equal to the purchase price of the feed: Plaintiffs paid for feed with a value of the contract price, but received feed with no value, given its toxicity. As a result, the trial court did not err by denying defendant's motion for a directed verdict on the contract claims.[2]

## 2. *Directed verdict on tort claims*

Defendant also contends that it was entitled to a directed verdict on its tort claims. As with the contract claims, defendant's argument hinges on the provision in the parties' contract discussing warranties and limitations on damages. In particular, defendant's argument turns primarily on the last sentence of that provision:

"LAND O'LAKES SHALL IN NO EVENT BE LIABLE TO BUYER FOR CONSEQUENTIAL DAMAGES; AND LAND O'LAKES LIABILITY FOR DAMAGES SHALL IN NO EVENT EXCEED THE PURCHASE PRICE OF THE PARTICULAR SHIPMENT WITH RESPECT TO WHICH A CLAIM IS MADE."

(Capitalization in original.)

---

[2] Defendant also argues that the trial court erred by denying its motion for a directed verdict because it is legal error for a court to enter a judgment awarding damages that were not pleaded. In so arguing, defendant relies on *Rieman v. Swope*, 190 Or App 516, 79 P3d 399 (2003), and *Northwest Marketing Corp. v. Fore-Ward Investments*, 173 Or App 508, 22 P3d 1230 (2001). Those cases, however, address the question of when it is erroneous for a trial court to *enter judgment* on an award of damages for an unpleaded theory, and do not suggest that a pleading deficiency supplies a basis for a directed verdict. In any event, the rule discussed in those cases does not necessarily apply where the opposing party is not surprised or prejudiced by the pleading deficiency. *Schroeder v. Schaefer*, 258 Or 444, 464, 483 P2d 818 (1971). Here, defendant does not contend that it was surprised by the fact that plaintiffs sought contract damages other than consequential damages, and the record reflects that defendant was able to respond directly to plaintiffs' claim for such damages, addressing it in closing argument. As a result, the cases that defendant cites do not suggest that the trial court erred by denying defendant's motion for a directed verdict on the contract claims.

Defendant contends that that provision unambiguously bars plaintiffs' recovery on their tort claims because plaintiffs' tort damages constitute "consequential damages" under the contract. Alternatively, defendant contends that even if the limitation on consequential damages does not apply to plaintiffs' tort claims, the latter part of the sentence unambiguously limits plaintiffs' total recovery on all claims to the purchase price of the feed.

The problem for defendant, as the trial court recognized, is that when that sentence is viewed in the context of the contractual provision in which it is located, it is ambiguous as to whether it applies to the parties' tort claims. Because the provision is ambiguous as to whether it applies to plaintiffs' tort claims, the trial court properly concluded that the provision did not bar or limit plaintiffs' recovery on their tort claims and correctly denied defendant's motion for a directed verdict.[3]

The provision at issue, as a whole, states:

"EXCLUSIONS OF WARRANTIES: LAND O'LAKES WARRANTS THAT THE PRODUCTS SOLD HEREUNDER MEET THE DESCRIPTION AS SET FORTH ON THE FRONT OF THIS CONTRACT. THERE ARE NO OTHER WARRANTIES, EXPRESS, IMPLIES [sic], STATUTORY, OR ARISING FROM COURSE OF

---

[3] The parties appear to dispute whether the ambiguity renders the provision unenforceable as a matter of law. Pointing to *Estey v. MacKenzie Engineering Inc.*, 324 Or 372, 927 P2d 86 (1996), plaintiffs argue that, to apply to their tort claims, any limitation on liability must be clear and unequivocal and, absent the requisite clarity, cannot apply to their claims at all. Defendants argue that *Estey*'s rule requiring a limitation of tort liability to be clear and unequivocal does not apply to commercial contracts. We need not resolve the issue. Even if the rule in *Estey* does not apply, the parties' contract is ambiguous, and that ambiguity would preclude defendant from obtaining a directed verdict. The best case scenario for defendant would be that the question about the provision's meaning would go to the jury if *Estey*'s rule does not apply. *Yogman v. Parrott*, 325 Or 358, 363-64, 937 P2d 1019 (1997). Alternatively, in the absence of extrinsic evidence addressing the parties' intentions—and the record suggests that this may be a case in which no such evidence exists—we would construe the provision against defendant, the drafter of the contract. *Berry v. Lucas*, 210 Or App 334, 339, 150 P3d 424 (2006) ("[I]t is a basic tenet of contract law that ambiguous language in a contract is construed against the drafter of the contract."); *see also Estey*, 324 Or at 376 (construing ambiguous contract clause purporting to limit negligence liability against drafter). One way or another, the ambiguity as to whether the contract provision applies to plaintiffs' tort claims means that defendant was not entitled to the directed verdict that it sought.

DEALING OR USAGE OF THE TRADE, OF QUAL-
ITY, FITNESS FOR PURPOSE, CAPACITY, DESCRIP-
TION OR OTHERWISE OF THE PRODUCTS SOLD
HEEUNDER [*sic*]. SELLER [*sic*] WAIVES ALL CLAIMS
FOR BREACH OF WARRANTY OR FOR FAILURE OF
THE PRODUCTS SOLD HEREUNDER UNLESS MADE
IN WRITING AND DELIVERED TO LAND O'LAKES
WITHIN 10 DAYS AFTER RECEIPT OF THE PRODUCT.
LAND O'LAKES SHALL IN NO EVENT BE LIABLE
TO BUYER FOR CONSEQUENTIAL DAMAGES; AND
LAND O'LAKES LIABILITY FOR DAMAGES SHALL IN
NO EVENT EXCEED THE PURCHASE PRICE OF THE
PARTICULAR SHIPMENT WITH RESPECT TO WHICH
A CLAIM IS MADE."

(Underscoring and capitalization in original.)

The first indication that the paragraph might apply to contract claims, and might not apply to tort claims, comes in its heading and first two sentences. Those provisions focus on warranties—a contract concept—and emphasize that defendant's sole warranty regarding the feed is that it will meet the standards described on the front of the contract. That suggests that the provision as a whole was intended to address warranties and contractual standards, along with the remedies for breaches of those standards.

The second indication comes in the third sentence of the paragraph:

"SELLER [*sic*] WAIVES ALL CLAIMS FOR BREACH
OF WARRANTY OR FOR FAILURE OF THE PRODUCTS
SOLD HEREUNDER UNLESS MADE IN WRITING
AND DELIVERED TO LAND O'LAKES WITHIN 10
DAYS AFTER RECEIPT OF THE PRODUCT."

(Capitalization in orginal.) Although the nonsensical reference to "seller" waiving claims for breach of warranty or failure of products muddies the waters as to how probative the sentence is regarding the parties' intentions, the reference to a claim for "breach of warranty" plainly refers to contract claims, suggesting again that the focus of the provision is on contract claims. The reference to claims "for failure of products sold hereunder" is ambiguous. It could be read to refer to claims asserting that the product sold under the contract failed to meet contractual standards, or could be

read more broadly to refer to claims based on any type of defect in the product, including tort claims. Regardless, the sentence plausibly can be read to refer to contract claims only, undercutting defendant's argument that the provision unambiguously encompasses tort claims.

Next, the final sentence of the provision is itself ambiguous as to whether it applies to tort claims in addition to contract claims:

> "LAND O'LAKES SHALL IN NO EVENT BE LIABLE TO BUYER FOR CONSEQUENTIAL DAMAGES; AND LAND O'LAKES LIABILITY FOR DAMAGES SHALL IN NO EVENT EXCEED THE PURCHASE PRICE OF THE PARTICULAR SHIPMENT WITH RESPECT TO WHICH A CLAIM IS MADE."

(Capitalization in original.) The reference to consequential damages in the first part of the sentence is itself an indication that the provision applies only to contract claims. As other courts have recognized, the phrase "consequential damages" ordinarily refers to contract damages, not tort damages. *Berwind Corp. v. Litton Industries, Inc.*, 532 F2d 1, 7 (7th Cir 1976) ("[T]he use of the words 'consequential damages' refers to contract rather than tort damages."); *Starr v. Dow Agrosciences LLC*, 339 F Supp 2d 1097, 1101 (D Or 2004) (concluding that contractual limitations on recovery of consequential damages did not bar recovery on negligence claims). In fact, Oregon's enactment of the Uniform Commercial Code defines "consequential damages" in terms of damages "resulting from the seller's *breach.*" ORS 72.7150(2) (emphasis added).[4] And although the final part of the sentence refers generally to "damages," not just to "consequential damages," in view of the preceding indications that the provision was intended to address contract claims rather than tort claims, we are unable to conclude that the provision unambiguously applies to tort claims as well as contract claims. Simply put, the provision reasonably can be read to apply solely to contract claims and, as a

---

[4] The parties' contract calls for application of Washington law, but the parties have litigated this case under Oregon law. For that reason, we too rely on Oregon law. In any event, the parties have not pointed to any Washington law that would suggest a different result.

result, is ambiguous as to whether the parties intended for tort claims to fall within its scope.

In arguing for a different result, defendant relies heavily on the Supreme Court's decision in *K-Lines v. Roberts Motor Co.*, 273 Or 242, 541 P2d 1378 (1975), and our decisions in *Atlas Mutual Ins. v. Moore Dry Kiln*, 38 Or App 111, 589 P2d 1134 (1979) and *Northwest Pine Products v. Cummins Northwest, Inc.*, 126 Or App 219, 868 P2d 21 (1994). In each of those cases, the court concluded that the contractual provisions unambiguously limited damages that were recoverable on tort claims. However, the provisions at issue in those cases were written differently from the one at issue in this case, in ways that more clearly signaled the parties' intentions to restrict tort recovery.

Starting with *K-Lines*: The provision at issue there provides a model for parties seeking to limit tort remedies. It specified a contractual remedy and then stated "the foregoing shall be Buyer's sole and exclusive remedy whether in contract, tort or otherwise." *K-Lines*, 273 Or at 245-48. By specifically referring to tort remedies, the provision unambiguously indicated that the contractual limitations on remedy applied regardless of what type of claim a buyer might have.

Turning to *Atlas Mutual Ins.*: As defendant points out, in that case we concluded that a provision that did not refer explicitly to tort remedies nevertheless unambiguously limited them. But the provision at issue contained a broad disclaimer of liability for "any loss, injury or damages to person or property" occasioned by the product sold under the pertinent contract. It read as follows:

"THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING THE WARRANTY OF MERCHANTABILITY, EXCEPT AS SPECIFICALLY SET FORTH HEREIN. All new material furnished hereunder is warranted against any defect in materials or workmanship, providing claim therefor is made in writing within 1 year after installation of such equipment. Our obligation on any claims is limited to replacement or repair of the defective part or material, f. o. b. North Portland, Oregon. *Except as above stated, we will not be liable for any loss, injury or*

*damages to persons or property resulting from failure or defective operation of any material or equipment furnished hereunder or delay in performance of this agreement, nor will we be liable for direct, indirect, special or consequential damages of any kind sustained by you from any cause.* This writing expresses the entire agreement between us and no other agreement, statement or representation shall be binding unless reduced to writing, signed by an officer of this Company and attached hereto."

*Atlas Mutual Ins.*, 38 Or App at 113 (capitalization in original; emphasis added). We concluded that the emphasized wording "unambiguously manifest[ed] defendant's intent to be free from all liability arising 'from any cause.'" *Id.* at 115. Here, however, the provision nowhere states that defendant is disclaiming liability for "any loss" resulting from the feed regardless of cause. The provision that we are addressing in this case lacks the clarity of the broad *Atlas Mutual Ins.* provision. As a result, *Atlas Mutual Ins.* does not assist defendant.

Finally, *Northwest Pine Products*: This case presents the closest call because the contractual provision at issue in it bears the strongest resemblance to the one at issue in this case. There, the plaintiff sued for lost profits incurred when a compressor installed by the defendant in the plaintiff's wood chipper exploded. 126 Or App at 221. Although our opinion does not mention the fact, the plaintiff asserted both contract and tort claims. We concluded that the limitation-of-liability provision unambiguously precluded the plaintiff from recovering lost profits on all claims. *Id.* at 223. The provision stated, in relevant part:

"LIMITATIONS OF LIABILITY

"* * * * *

"ANY LIABILITY OF CUMMINS ARISING OUT OF ANY MATERIAL OR SERVICES PROVIDED HEREUNDER SHALL NOT EXCEED THE COST OF CORRECTING OR REPLACING SUCH DEFECTIVE MATERIALS OR SERVICES IN ACCORDANCE WITH THE AFOREMENTIONED WARRANTIES. IN NO EVENT SHALL CUMMINS BE LIABLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING, WITHOUT

LIMITATION, TOWING OR OTHER TRANSPORTATION CHARGES, LOSS OF REVENUE, OR LOSS OF USE."

*Id.* at 221 (capitalization in orginal). We held that the specification that the defendant would not be liable for "consequential damages, including" damages for "loss of revenue," unambiguously precluded the plaintiff from recovering lost profits. Defendant contends that, because *Northwest Pine Products* involved both tort and contract claims, it supports—if not compels—the conclusion that the parties' reference to consequential damages in this case unambiguously limits plaintiffs' recovery on both contract and tort claims.

Defendant's argument has some force, given the similarity between the provision at issue in *Northwest Pine Products* and the one at issue here. However, the provisions are not identical and the differences between them convince us that our decision in *Northwest Pine Products* does not dictate the conclusion that the provision at issue in this case unambiguously applies to limit recovery on plaintiffs' tort claims.

First, the provision at issue in *Northwest Pine Products* was not included in a provision focused on contract warranties but, instead, was located in a separate section labeled "Limitations of Liability." *Id.* at 221. Although parts of that section addressed application of warranties, the contract also had a separate section addressing warranties. *Id.* The separation of the limitations-of-liability section from the warranty section suggests that the parties intended for the limitations to apply to claims beyond warranty claims.

Second, the first sentence of the provision at issue in *Northwest Pine Products* refers to a limit on "*any* liability * * * arising out of any material or services provided hereunder." *Id.* (Emphasis added; capitalization omitted.) That broad reference to "any liability" suggests that the parties intended for the provision to limit "any liability" regardless of whether that liability arose in tort or in contract.

Third, although the reference to "consequential damages" could have suggested that the parties intended the limitations to apply only to contract claims, by specifically defining "consequential damages" in the contract to

include "loss of revenue" along with other specific items, the parties clearly indicated that damages for loss of revenue would not be recoverable. For all of those reasons, the *Northwest Pine Products* provision was unambiguous as to its application to the plaintiff's tort claims for lost profits.

Here, by contrast, the provision lacks similar indicia of the parties' intent that it would apply to tort claims. It does not speak to "any" or "all" liability or losses, it does not supply a specific definition of consequential damages that suggests that the parties employed that phrase to refer to tort damages, and it is located in the section of the contract addressing warranties, rather than in a general section addressing limitations on liability. Under those circumstances, *Northwest Pine Products* does not persuade us that the parties' contract unambiguously limits plaintiffs' ability to recover tort damages.

In the end, we think that the provision in the parties' contract most nearly resembles one which the Supreme Court concluded was ambiguous in *Estey v. MacKenzie Engineering Inc.*, 324 Or 372, 378, 927 P2d 86 (1996). That provision stated, "The liability of [the defendant] and the liability of its employees are limited to the Contract Sum." *Id.* at 374. The court reasoned that the provision was susceptible to multiple reasonable interpretations, including the interpretation that the provision applied only to liability arising from a breach-of-contract claim. *Id.* at 378-79. As a result, the court was unable to conclude that the provision applied unambiguously to the plaintiff's tort claims.

The same is true here. As explained, the provision in the parties' contract reasonably can be interpreted to apply only to plaintiffs' contract claims. It therefore is ambiguous as to whether it applies to plaintiffs' tort claims. For that reason, defendant was not entitled to a directed verdict on the ground that the provision precluded plaintiffs from recovering on their tort claims or limited their recovery on those claims.

B. *Election of Remedies*

The next question is whether, under the doctrine of election of remedies, plaintiffs were required to elect between

recovering on their contract claims or recovering on their tort claims. Specifically, defendant contends that plaintiffs were required to elect between recovering on their contract claims (which would afford them a lower amount of damages but allow them to recover attorney fees), or recovering on their tort claims (which would allow them to recover a larger amount of damages but no attorney fees). The trial court concluded that plaintiffs were not required to elect between contract and tort remedies. On review for legal error, we agree with that conclusion. *See, e.g., Godat v. Waldrop*, 78 Or App 374, 379-80, 717 P2d 180, *rev den*, 302 Or 86 (1986) (reviewing trial court's application of election-of-remedies doctrine for legal error).

That doctrine of election of remedies requires a plaintiff to elect between two remedies where they either are inconsistent with each other, contradictory, or would result in double recovery. *McAllister v. Charter First Mortgage, Inc.*, 279 Or 279, 286-87, 567 P2d 539 (1977) (explaining that election is required when remedies sought are inconsistent); *Colonial Leasing Co. v. Tracy*, 276 Or 1193, 1196-97, 557 P2d 639 (1976) ("The doctrine of election of remedies is designed to prevent double recovery for a single wrong."); *State ex rel Washington Co. v. Betschart*, 72 Or App 692, 700-01, 697 P2d 206 (1985) (same). Ordinarily, an election, if required, need not be made "until a judicial proceeding has gone to judgment on the merits." *Colonial Leasing Co.*, 276 Or at 1197.

As tried and submitted to the jury, plaintiffs' contract remedies were not inconsistent with plaintiffs' tort remedies. The gravamen of plaintiffs' contract claims was that the feed provided by defendant did not meet with contractual standards; the gravamen of plaintiffs' tort claims was that defendant breached applicable standards of care in producing that feed, and that the feed produced was defective and unreasonably dangerous for its intended purpose. In other words, plaintiffs' theory was that defendant sold them feed that did not comply with the parties' contract, causing plaintiffs contract damages, and that that feed then damaged plaintiffs' herd of dairy cows, causing plaintiffs to suffer a range of reasonably foreseeable economic losses. Those theories are neither inconsistent nor contradictory.

Moreover, there is no likelihood that the jury's award of damages on the contract claims duplicated its award of damages on the tort claims. The jury instructions on contract damages told the jury that it could "award money damages for the difference in value between the cow feed as provided by Land O'Lakes and the value the cow feed would have had" if it had met contractual standards. The jury instructions on tort damages told the jury that a different measure of damages—one that did not take into account the value of the feed—applied to the negligence and strict liability claims:

"With respect to [plaintiffs'] negligence and products liability claims, economic damages are the objectively verifiable monetary losses that a party has incurred or will probably incur. In determining the amount of economic damages, if any, consider:

"(1)  Lost profits since the date of injury/damage;

"(2)  Decreased value of affected cows;

"(3)  Milk production lost since the date of injury/damage;

"(4)  The value of any cows lost, including the mature cows, calves, and those cows that would have been born to cows lost;

"(5)  Veterinary expenses;

"(6)  Testing and inspection expenses;

"(7)  Future similar losses."

Thus, the jury was instructed that nonoverlapping measures of damages applied with respect to the contract claims and the tort claims, and the jury is presumed to have followed those instructions. *Rowlett v. Fagan*, 358 Or 639, 669-70, 369 P3d 1132 (2016). Under those circumstances, the trial court did not err when it did not require plaintiffs to make an election of remedies.

C.  *Attorney Fees*

Defendant's remaining argument is that the trial court erred when it permitted plaintiffs to amend their complaint during trial to assert an entitlement to attorney fees

under the parties' contract. We review the trial court's decision to grant leave to amend for abuse of discretion. *Benj. Franklin Fed. Savings and Loan v. Phillips*, 88 Or App 354, 355, 745 P2d 437 (1987).

Here, we are persuaded that the trial court did not abuse its discretion. The complaint alleged contractual claims from the onset of the litigation. Defendant itself drafted the contract that gave rise to plaintiffs' claimed entitlement to fees on the contract claims and, for that reason, could not have been unfairly surprised by the fact that plaintiffs ultimately invoked that provision in connection with their contract claims. *See Hall v. Fox*, 106 Or App 377, 380, 808 P2d 99 (1991) (noting that the defendant was aware of the contractual fee provision in concluding that the defendant was not prejudiced by late amendment to complaint to assert entitlement to fees); *see also Htaike v. Sein*, 269 Or App 284, 298-301, 344 P3d 527, *rev den*, 357 Or 595 (2015). Beyond that, on this record, defendant's arguments that plaintiffs' delay in asserting their fee entitlement interfered with its ability to resolve fee issues before trial by settlement or otherwise do not persuade us that it was an abuse of discretion for the trial court to allow leave to amend. *Htaike*, 269 Or App at 299-301 (rejecting argument that allowing post-trial amendment of pleading to assert claim for attorney fees represented an abuse of discretion where opposing party might have pursued settlement if amendment had been made earlier); *Hall*, 106 Or App at 379-80 (rejecting similar argument). We therefore reject defendant's claim that the trial court erred by allowing leave to amend.

Affirmed.