Argued and submitted May 7, decision of the Court of Appeals and judgment of the circuit court reversed; case remanded to the circuit court for further proceedings November 29, 1996, reconsideration allowed, opinion published as modified by order February 4, 1997

Richard Craig ESTEY,
*Petitioner on Review,*

*v.*

MACKENZIE ENGINEERING INCORPORATED,
an Oregon corporation;
and Leonard Krombein, an individual,
*Respondents on Review.*

(CC 9212-08572; CA A82218; SC S42716)

927 P2d 86

Charles F. Hinkle, of Stoel Rives LLP, Portland, argued the cause and filed the briefs for petitioner on review.

Karen O'Kasey, of Schwabe, Williamson & Wyatt, Portland, argued the cause and filed the brief for respondents on review.

Phil Goldsmith, Portland, and Kevin Milton Myles, of Myles & Myles, Portland, filed a brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

Before, Carson, Chief Justice, Gillette, Van Hoomissen, Fadeley, and Durham, Justices.**

VAN HOOMISSEN, J.

---

** Unis, J., retired June 30, 1996, and did not participate in this decision. Graber, J., did not participate in the consideration or decision of this case.

## VAN HOOMISSEN, J.

Plaintiff appeals a Court of Appeals' decision affirming a circuit court's grant of summary judgment in favor of defendants on plaintiff's claims for negligence, negligent misrepresentation, and breach of contract. *Estey v. MacKenzie Engineering Inc.*, 137 Or App 1, 902 P2d 1220 (1995). The dispositive issue is whether a clause in the parties' contract limiting defendants' liability "to the Contract Sum" applies to plaintiff's negligence claim. We hold that the clause does not limit defendants' liability for negligence. Accordingly, we reverse the contrary ruling of the Court of Appeals.

Plaintiff hired defendant MacKenzie Engineering, Incorporated (MEI) to perform a "limited visual review" of a house that he intended to purchase. The review was intended to identify major structural deterioration, if any, including settlements to the structure. The parties' contract set out the estimated contract sum of $200. It also provided:

> "The liability of MEI and the liability of its employees are limited to the Contract Sum."

Plaintiff signed the contract. MEI's employee, defendant Krombein, a licensed professional engineer, conducted a limited visual review of the house and gave plaintiff a two-page written report. The report noted past moisture infiltration, "minor cracks" in the walls, "stretch marks" in the floors, and some settlement. The report further stated in part that "[t]he structure appeared to be in generally good condition," that "[n]o major areas of structural deterioration were observed," and that "[a]lthough some previous movement of the foundation and structure was evident, it did not appear that any major failure or immediate movement of the foundation was eminent."

After he received MEI's report, plaintiff purchased the house. Six weeks later, plaintiff discovered that a broken water pipe had been leaking under the house before the date of Krombein's inspection. He also noticed that the floors in the house slanted in an easterly direction and that, when opened, the doors swayed in the same direction. Plaintiff hired another engineering firm to inspect the house. That

firm reported that "It appears probable that at the time of original construction the easterly half of the residence was constructed on uncompacted fill which over time consolidated. The consolidation resulted in settlement of the footings and the recent breaking of the water service line has resulted in additional settlement due to saturation of the underlying uncompacted surficial soils." The subsidence caused extensive cracking and other damage to the house. At the time the summary judgment motion was filed, plaintiff already had spent about $190,000 on repairs and, based on contractors' bids, he estimated that he would spend another $150,000 repairing and stabilizing the house.

Plaintiff brought this action against MEI and Krombein, alleging negligence, negligent misrepresentation, and breach of contract. Plaintiff sought damages of $340,000 for the cost of repairing and stabilizing his house. Defendants moved for summary judgment, asserting the limitation of liability clause in the parties' contract as an affirmative defense. Plaintiff moved for partial summary judgment on the ground that the limitation of liability clause is unenforceable.

The circuit court granted defendants' motion for summary judgment, concluding that the contract limited defendant's liability for negligence, negligent misrepresentation, and breach of contract. The parties stipulated that, if enforceable, the limitation of liability clause constitutes a complete bar to plaintiff's claims for damages. The Court of Appeals affirmed, holding that the limitation clause barred plaintiff's claim, because it was conspicuous, clear and unequivocal, and did not violate public policy. *Estey*, 137 Or App at 5-6. We allowed plaintiff's petition for review.

Plaintiff argues that the limitation of liability clause is unenforceable with respect to his negligence claim, because the clause does not clearly and unequivocally express an intent to limit defendants' liability for negligence. Plaintiff further argues that a professional engineer who performs residential inspection services is charged with a duty of public service and, therefore, may not insulate himself from the consequences of his own negligence.

Defendants argue that the clause at issue in this case clearly and unequivocally expresses the parties' intent

that defendants' liability for negligence be limited to the contract sum and, therefore, it is enforceable. Defendants further argue that they did not assume a duty of public service by entering into the contract and, therefore, principles of public policy do not justify the invalidation of the clause.

In *K-Lines, Inc. v. Roberts Motor Co.*, 273 Or 242, 248, 541 P2d 1378 (1975), this court held:

> "Agreements to exonerate a party from liability or to limit the extent of the party's liability for tortious conduct are not favorites of the courts but neither are they automatically voided. The treatment courts accord such agreements depends upon the subject and terms of the agreement and the relationship of the parties."

This court has examined contractual provisions that purport to immunize a party from the consequences of his or her own negligence and has held such provisions to be enforceable under limited circumstances. In *Transamerica Ins. Co. v. U.S. Nat'l Bank*, 276 Or 945, 951, 558 P2d 328 (1976), the court held:

> "[A] contract will not be construed to provide immunity from the consequences of a party's own negligence unless that intention is clearly and unequivocally expressed, and * * * an ambiguous instrument * * * will be construed against the party who drafted it."

*See also Waterway Terminals v. P.S. Lord*, 242 Or 1, 19, 406 P2d 556 (1965) ("a presumption will be indulged against an intention to contract for immunity from the consequence of one's own negligence"); *Southern Pacific Co. v. Layman*, 173 Or 275, 279, 145 P2d 295 (1944) ("contracts of indemnity will not be construed to cover losses to the indemnitee caused by his own negligence unless such intention is expressed in clear and unequivocal terms").

The court's inquiry into the parties' intent in this regard has focused not only on the language of the contract, but also on the possibility of a harsh or inequitable result that would fall on one party by immunizing the other party from the consequences of his or her own negligence. *See, e.g., Commerce & Industry Ins. v. Orth*, 254 Or 226, 231-32, 458 P2d 926 (1969) (so stating); *Layman*, 173 Or at 280 (same). That

inquiry in turn focuses on the nature of the parties' obligations and expectations under the contract.

*Layman* provides a good example of this principle. The contract at issue in *Layman* allowed a landowner to construct a road across an adjacent railroad's right-of-way. The railroad settled a personal injury action brought by a third party injured on the right-of-way as a result of the railroad's negligence. The railroad brought an action against the landowner to enforce a clause indemnifying the railroad "against any and all loss, damage, injury, cost and expense of every kind and nature, from any cause whatsoever, resulting directly or indirectly from the maintenance, presence or use of [the railroad] crossing." *Id.* at 276-77. By its terms, the broad language of the indemnity provision appeared to immunize the railroad from the consequences of its own negligence. *Id.* at 281. Notwithstanding, this court held that such an interpretation could not have been reasonably contemplated by the parties. *Id.* at 282-83. For the "mere privilege of passing over" the railroad's tracks, the landowner could not have intended to bear the risk of "ruinous liability" caused by the railroad's negligence. *Id.* at 283.

In *Southern Pacific Co. v. Morrison-Knudsen Co.*, 216 Or 398, 414, 338 P2d 665 (1959), a case involving a similar indemnity clause, this court concluded that the parties did intend to immunize the railroad from the consequences of its own negligence. The court stated that it continued to adhere to the doctrines in *Layman, id.* at 411, but found that the extent of the railroad's participation in and cooperation with defendant's enterprise on the railroad's spur warranted a conclusion that the parties intended that the defendant would bear the risk of the railroad's liability for negligence. *Id.* at 414-16. In contrast to the landowner in *Layman*, the privilege conferred on the defendant in *Morrison-Knudsen* fell "far short of being a 'mere privilege' " to cross the railroad's right-of-way with " 'a comparatively small risk.' " *Id.* at 414.

Defendants argue that we should not apply the principles expressed in *Layman* and similar cases, because the clauses in those cases purported to completely exculpate a party from the consequences of its own negligence, whereas

the clause at issue in this case merely limits defendants' liability to the contract sum. However, because the specified contract damages at issue here are nominal in comparison with the damages that might foreseeably result from defendants' negligence, such a distinction would be illusory. *See Tessler & Son, Inc. v. Sonitrol Sec. Systems, Inc.*, 203 NJ Super 477, 482, 497 A2d 530, 532 (1985) (clause limiting party's liability to $250 "[i]n real effect * * * is an exculpatory clause, because it denies liability for all but a nominal amount of damages").[1]

Plaintiff argues that a limitation of liability or exculpatory clause never could be effective against a negligence claim unless it included an express provision to that effect. However, we have upheld such clauses that did not specifically mention negligence. *See, e.g., Commerce and Industry Ins.*, 254 Or at 232 (court applied clause in insurance policy allowing insured to release others from liability "from whatever cause arising"); *Morrison-Knudsen*, 216 Or at 417 (court applied clause indemnifying railroad from "all liability, cost and expense"). We decline to hold that the word "negligence" must expressly appear in order for an exculpatory or limitation of liability clause to be effective against a negligence claim.

However, in view of the actual language of the limitation of liability clause in this case, as well as the circumstances of the parties' contractual relationship, we are unable to conclude that the clause clearly and unequivocally expresses an intent to limit defendants' liability for the consequences of their own negligence to the contract sum. First, the word "liability," standing alone, is less encompassing than the broad disclaimer found in *Layman*, which was held not to apply against a negligence claim. In this case, plaintiff reasonably might have interpreted "liability" to refer only to

---

[1] Defendants argue that *Tessler* is inapposite because the contract at issue in the present case was limited to the "contract sum" which, defendants assert, could have been as high as $100,000. Presumably, defendants are referring to the clause in the contract providing that plaintiff would have to pay for any "reimbursable costs and consultants' fees [that] are *in addition* to the Contract Sum." (Emphasis added.) However, the contract also provided that the "Contract Sum," *apart* from any additional costs, was estimated to be $200. Thus, when the parties signed the contract, defendants' "liability" was limited to an estimated $200.

liability arising from breach of contract, or from a reasonable failure to discover latent defects, or from property damage resulting from the review itself. Given the reasonable possibility of such limited interpretations, we cannot conclude that the parties "clearly and unequivocally" intended a broader interpretation that would have required plaintiff to bear the risk of defendants' negligence.

Second, plaintiff entered into this contract with defendants for the sole purpose of obtaining an accurate report on the structural integrity of the house, so that plaintiff could make an informed decision about the advisability of purchasing the house. There is evidence that plaintiff relied on defendants' report in choosing to proceed with the purchase. In the context of having to make such an important decision, plaintiff most likely would not have understood the limitation of liability clause to effectively immunize defendants from liability for negligently rendering a flawed report. Defendants' attempt to characterize the contract as a "high-risk, low-cost" transaction does not persuade us that plaintiff, a lay consumer, should bear the risk of the alleged negligence of a licensed professional engineer.

We conclude that the limitation of liability clause contained in the parties' contract does not bar plaintiff's negligence claim. Because of our conclusion on that issue, we need not reach plaintiff's second argument that a professional engineer who performs a structural inspection of a private home is charged with a duty of public service, so that they are precluded from contractually limiting his liability for negligence.

The decision of the Court of Appeals and the judgment of the circuit court are reversed. The case is remanded to the circuit court for further proceedings.