Argued and submitted October 12, affirmed December 29, 2022

CERTAIN UNDERWRITERS AT LLOYD'S
LONDON REPRESENTED BY XL CATLIN
SYNDICATES 2003 AND 1209,
Liberty Syndicate 4472, and
Novae Syndicate 2007,
*Plaintiffs-Appellants,*

*v.*

TNA NA MANUFACTURING, INC.,
dba FOODesign Machinery & Systems; and
Food Design, Inc., an Oregon corporation,
*Defendants-Respondents.*

Clackamas County Circuit Court
18CV15868; A175864

523 P3d 447

Plaintiffs (Lloyd's London), the insurer for SunOpta, Inc. (SunOpta), brought this lawsuit alleging that equipment SunOpta bought from Food Design, Inc. (FDI) was defective. The trial court granted summary judgment in favor of FDI, concluding that the sales contract between the parties unambiguously immunized FDI from tort liability, and ordered Lloyd's London to pay attorney fees as a discovery sanction under ORCP 46 A(4). Lloyd's London appeals and raises two assignments of error. The first assignment of error challenges the grant of summary judgment and contends that the sales contract did not clearly express an intent to shield FDI from tort liability. The second asserts that the trial court abused its discretion when it awarded FDI attorney fees. *Held*: The Court of Appeals concluded that, by disclaiming liability of the seller "in any event," in a section separate from the one titled "Warranties" and with broad language as to the types of damages disclaimed, the contract unambiguously expressed the parties' intent to immunize FDI from tort liability. As to the second assignment of error, the trial court did not abuse its discretion in awarding attorney fees as a sanction.

Affirmed.

Henry C. Breithaupt, Senior Judge.

Sara Kobak argued the cause for appellants. Also on the briefs were William J. Ohle, Aukjen T. Ingraham, and Schwabe, Williamson & Wyatt, P.C.

Ashley Lauren Vulin argued the cause for respondents. Also on the briefs were P. Andrew McStay, Jr., Meagan A.

Himes, and Davis Wright Tremaine LLP; and Dayna J. Christian, Nicole McMillan, and Immix Law Group PC.

Before Tookey, Presiding Judge, and Egan, Judge, and Kamins, Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

Plaintiffs (Lloyd's London), the insurer for SunOpta, Inc. (SunOpta), brought this lawsuit, alleging that equipment SunOpta bought from Food Design, Inc. (FDI), was defective. The trial court granted summary judgment in favor of FDI, concluding that the sales contract between the parties unambiguously immunized FDI from tort liability, and ordered Lloyd's London to pay attorney fees as a discovery sanction under ORCP 46 A(4). Lloyd's London appeals and raises two assignments of error. The first assignment of error challenges the grant of summary judgment and contends that the sales contract did not clearly express an intent to shield FDI from tort liability. The second asserts that the trial court abused its discretion when it awarded FDI attorney fees. We affirm.

In 2012, FDI and SunOpta entered into an agreement whereby SunOpta would purchase food-processing equipment for use in its sunflower seed operation. In 2016, there was an outbreak of listeria monocytogenes at SunOpta's facility which forced a sunflower seed recall. SunOpta made claims to Lloyd's London under its insurance policy and received the full policy limit of $20 million. Lloyd's London subsequently sued defendants FDI and TNA NA Manufacturing, Inc. (TNA), as FDI's successor in interest, for strict products liability and negligence. FDI and TNA moved for summary judgment, and the trial court granted the motion, determining that the terms and conditions of the sales contract evinced an unambiguous intent to limit FDI's liability and responsibility for tort damages. The trial court focused on sections 5, 7, 11, and 12 of the sales contract and reasoned that, when read together, they reflected an unequivocal choice by the parties to allocate liability exposure to SunOpta.

Beginning with Lloyd's London's first assignment of error challenging the trial court's summary judgment ruling, "[w]e review for legal error a ruling that contract language is unambiguous." *Milne v. Milne Construction Co.*, 207 Or App 382, 388, 142 P3d 475, *rev den*, 342 Or 253 (2006). In construing a contract, "a court *** examines the text of the disputed provision in the context of the contract as

a whole[.]" *Cryo-Tech, Inc. v. JKC Bend, LLC*, 313 Or App 413, 423, 495 P3d 699 (2021), *rev den*, 369 Or 211 (2022). Ambiguity in a contract means that "a provision, or multiple provisions read together, have no definite meaning or are capable of more than one sensible and reasonable interpretation." *American Wholesale Products v. Allstate Ins. Co.*, 288 Or App 418, 424, 406 P3d 163 (2017).

A limitation of liability clause need not use the word "negligence" in order to be effective against a negligence claim. *Estey v. Mackenzie Engineering Inc.*, 324 Or 372, 378, 927 P2d 86 (1996). However, "[w]hen a contracting party seeks to immunize itself from liability for its own negligence, its intention to do so must be clearly and unequivocally expressed." *American Wholesale Products*, 288 Or App at 423 (citation and internal quotation marks omitted). In applying that standard, courts consider both (1) the language of the contract; and (2) the possibility of a harsh or inequitable result that would fall on one party if the other party was immunized from the consequences of its own negligence. *Id*.

Thus, the first question that we must address is whether the contract clearly and unequivocally expressed an intention to immunize FDI from tort liability. The parties agree that the relevant provisions of the contract are sections 5, 7, 11, and 12. As explained below, we conclude that sections 5, 7, and 12 do not support a conclusion of an unambiguous waiver of tort liability, but section 11 does.

Section 5 provides, in relevant part:

"WARRANTIES

"Seller's warranties are limited as follows:

"There are no warranties which extend beyond the description on the face hereof.

"FOODesign Machinery & Systems warrants to the original Customer that the equipment is free from manufacturing defects. Seller agrees to repair or replace, F.O.B. any part of standard commercial manufactured items which are, within the warranty period of the manufacturer's item in question, found defective or otherwise unsatisfactory owing to faulty material or workmanship. The

warranty shall not apply to any product which has been damaged by improper usage, accident, neglect, alteration or abuse. The liability of the manufacturer is limited solely to replacing the defective product. *In no event shall the manufacturer be liable for special or consequential damages to any Purchaser, user or other person.*"

(Uppercase in original; emphasis added.) The trial court concluded that that section supported a waiver of tort liability, reasoning that a limitation of damages to "any * * * user or other person" would only be consistent with tort claims, because those persons would lack the privity to enforce claims under the contract.

We disagree. Section 5 on its own is not an unambiguous waiver of *tort* liability, because the provision is related to warranties, which is typically a contract concept. *See Kaste v. Land O'Lakes Purina Feed, LLC*, 284 Or App 233, 242, 392 P3d 805, *rev den*, 361 Or 671 (2017) (describing warranties as "a contract concept"). Additionally, the trial court's reasoning that the terms cannot be applied in contract because "user[s] or other person[s]" lack privity to enforce contract claims is not correct. As Lloyd's London points out, some warranties may be enforced by remote purchasers even in the absence of privity. *See Dravo Equipment Co. v. German*, 73 Or App 165, 167, 698 P2d 63 (1985) ("We hold that privity is not required to recover economic loss on an express warranty."); *Larrison v. Moving Floors Inc.*, 127 Or App 720, 724, 873 P2d 1092 (1994) (privity of contract is not required in a claim for breach of an express warranty).[1] Because section 5 could plausibly be read to address contract warranties, its terms do not clearly and unequivocally disclaim tort liability.

The relevant part of section 12 is similarly focused on contract remedies:

"DEFAULT, DAMAGES AND REMEDIES

---

[1] By contrast, we have held that privity of contract is a necessary prerequisite in a breach of contract claim for personal injuries. *Colvin v. FMC Corporation*, 43 Or App 709, 715-17, 604 P2d 157 (1979); *see Simonsen v. Ford Motor Co.*, 196 Or App 460, 479, 102 P3d 710 (2004), *rev den*, 338 Or 681 (2005) ("[P]rivity of contract is a necessary prerequisite in a breach of contract claim for personal injuries.").

> "In the event of default by either party, all rights and remedies shall be governed by the law of the State of Oregon and venue for any litigation shall be laid in the Circuit Court of Oregon for the County of Clackamas.
>
> "Seller shall further not be liable for any consequential damages."

(Uppercase in original.) The trial court considered section 12's disclaimer of liability for consequential damages relevant to the analysis of the disclaimer of tort liability. However, the terms "default" and "consequential damages," are ordinarily used in situations involving contracts. *See Kaste*, 284 Or App at 243 ("[T]he phrase consequential damages ordinarily refers to contract damages, not tort damages." (Internal quotation marks omitted.)); *cf.* ORS 93.915 (giving instructions in the event of a default under a contract for conveyance of real property). Section 12, like section 5, addresses contract requirements and remedies, and does not unambiguously reflect a clear and unequivocal waiver of FDI's liability in tort.

Turning to section 7, that provision provides, in relevant part:

> "MATERIALS AND WORKMANSHIP
>
> "* * * * *
>
> "Purchaser agrees to defend and indemnify Seller against any loss, cost, damage or expense (including reasonable attorney's fees) resulting from any claims by Purchasers or by third parties (including Purchaser's employees) of damage to property or injury to persons resulting from faulty installation or negligent operation of the equipment."

(Uppercase in original.) The trial court determined that section 7 effectively prohibited tort claims by Lloyd's London against FDI, reasoning that the only way the seeds could have become infected would have involved "negligent operation of the equipment," for which section 7 explicitly makes SunOpta liable. However, that reasoning required drawing an inference against Lloyd's London regarding the cause of the outbreak, which is contrary to the standard of review on summary judgment. *See Morehouse v. Haynes*, 350 Or 318,

320, 253 P3d 1068 (2011) ("We take the facts from the summary judgment record and view those facts and all reasonable inferences that may be drawn from them in the light most favorable to plaintiff, the nonmoving party."). By its terms, section 7 reflects an agreement to indemnify FDI against any negligence related to operating or installing the equipment. It does not follow that, through that language, the parties intended for SunOpta to immunize FDI from any claims related to *FDI's* negligence.

Although we disagree with the trial court's analysis as to those other provisions, we conclude, as did the trial court, that section 11 of the sales contract unambiguously disclaimed any liability in tort when viewed in the context of the contract as a whole. That section provides:

> "DISCLAIMERS
>
> "There are no warranties, express or implied, including the warranty of merchantability and the warranty of fitness for a particular purpose extending beyond those set forth in Section 5. Seller's liability shall be limited to the repair or replacement of any defective equipment and the parties agree that this shall be Purchaser's sole and exclusive remedy. *Seller shall not be liable, in any event, for loss of profits, incidental or consequential damages or failure of the equipment to comply with any federal, state or local laws.* Sellers shall under no circumstances be liable for the cost of labor, raw materials used or lost in testing or experimental or production operations of any equipment sold, whether such testing, production or experimentation is done under the supervision of a representative of the Seller or of an employee or other representative of the Purchaser."

(Uppercase in original; emphasis added.) By disclaiming liability of the seller "in any event," in a section separate from the one titled "Warranties" and with broad language as to the types of damages disclaimed, we conclude that the contract unambiguously expressed the parties' intent to immunize FDI from tort liability.

First, the contract's provision that the seller "shall not be liable, in any event," for lost profits or incidental or consequential damages extends beyond warranties or contract-related damages. A contract that contains a "broad

reference to 'any liability' suggests that the parties intended for the provision to limit 'any liability' regardless of whether that liability arose in tort or in contract." *Kaste*, 284 Or App at 246 (quoting *Northwest Pine Products v. Cummins Northwest, Inc.*, 126 Or App 219, 221, 868 P2d 21 (1994)); *see also Atlas Mutual Ins. v. Moore Dry Kiln*, 38 Or App 111, 113, 115, 589 P2d 1134 (1979) (contract unambiguous when it disclaimed liability for "*any loss, injury or damages* to persons or property resulting from failure or defective operation of any material or equipment" and for "direct, indirect, special or consequential damages of any kind sustained by you *from any cause*") (emphases added)). Section 11's statement that FDI "shall not be liable, in any event" is substantially similar to a disclaimer of "any liability." *See Northwest Pine Products*, 126 Or App at 221, 223 (disclaimer foreclosed suit seeking to recover lost revenue that provided "any liability of [defendant] arising out of any material or services provided hereunder shall not exceed the cost of correcting or replacing such defective materials or services" and that "in no event shall [defendant] be liable for any incidental or consequential damages, including, without limitation, *** loss of revenue").

Second, the fact that the terms at issue were not included in the "Warranties" section, but instead, in a section labeled "Disclaimers," indicates an intention for those disclaimers to apply beyond contract liability. In general, the "separation of the limitations-of-liability section from the warranty section suggests that the parties intended for the limitations to apply to claims beyond warranty claims." *Kaste*, 284 Or App at 246 (citing *Northwest Pine Products*, 126 Or App at 221). The same is true for section 11 here.

Finally, the disclaimer expressly applies to "loss of profits, incidental or consequential damages or failure of the equipment to comply with any federal, state or local laws," which implicates liability beyond that arising under the contract. Specifically, we conclude that the disclaimer for "failure of the equipment to comply with any federal, state or local laws" broadened the provision to encompass tort liability. As the trial court noted, a disclaimer of any liability related to a violation of law necessarily implicates claims for negligence *per se*, which is a concept in tort. *See Scheffel v.*

*Oregon Beta Chapter of Phi Kappa Psi*, 273 Or App 390, 415, 359 P3d 436 (2015) (outlining the requirements of a negligence *per se* claim based on a violation of an administrative rule).

Lloyd's London's argument that the reference to the equipment's legal compliance could reasonably be interpreted as a disclaimer of implied warranties is not persuasive. Section 5 of the contract stipulates that "[t]here are no warranties which extend beyond the description on the face hereof," and section 11 provides that "[t]here are no warranties, express or implied, *** beyond those set forth in Section 5." Under Lloyd's London's logic, the contract would have three different provisions communicating the same information— that the contract contains no implied warranties. When read in the context of the agreement as a whole, that disclaimer related to the equipment's compliance with "federal, state or local laws" is only capable of one "sensible and reasonable interpretation." *American Wholesale Products*, 288 Or App at 424. Those elements, in combination, lead us to conclude that the contract unambiguously reflects the parties' clear and unequivocal intent to immunize FDI from tort liability.

In sum, we disagree with the trial court's reasoning suggesting that sections 5, 7, and 12 shielded FDI from tort liability, because they all could be plausibly read as limitations to contract damages. Section 11, on the other hand, cannot be read in a way that restricts it to damages related to contract liability, and therefore we agree with the trial court's ultimate conclusion that the text of the sales contract unambiguously limited FDI's tort liability.

Turning to the second part of the test for assessing whether a limitation of liability should apply, we consider "the possibility of a harsh or inequitable result that would fall on one party if the other party was immunized from the consequences of its own negligence." *American Wholesale Products*, 288 Or App at 423 (internal quotation marks omitted). That question "focuses on the nature of the parties' obligations and expectations under the contract." *Estey*, 324 Or at 377. We note that the trial court asked the wrong question by assessing whether it would be harsh to impose tort liability on FDI. Instead, the correct inquiry is whether

the result would be harsh to *the non-immunized* party. *See id.* at 376-77 (court's inquiry focuses "on the possibility of a harsh or inequitable result that would fall on one party by immunizing the other party from the consequences of his or her own negligence").

Despite that error, applying the correct standard to this case results in the same outcome. The language of the contract indicates that the parties expected that issues involving the use of FDI's equipment would be remedied by either repairing or replacing the equipment. Nothing in the nature of the parties' relationship or bargaining power suggests that the parties reasonably held different expectations and, thus, it would not be harsh or inequitable to limit FDI's liability. *See American Wholesale Products*, 288 Or App at 424 (contract that simply "allocate[d] risk" did not create a harsh or inequitable result).

Next we address Lloyd's London's second assignment of error, regarding the award of attorney fees to FDI under ORCP 46 A(4). During the litigation, FDI requested materials related to SunOpta's investigation into the cause of the outbreak and those involving or created by the consultants hired as part of that investigation. Lloyd's London withheld documents pertaining to those consultants on the grounds that they were privileged as experts hired in advance of litigation. FDI filed a motion to compel, which was ultimately granted by the trial court. FDI subsequently requested attorney fees under ORCP 46 A(4), and the trial court granted that request, finding that the withholding of those materials was "unreasonable and not substantially justified."

We review a decision to sanction a party under ORCP 46 A for abuse of discretion. *See Burdette v. Miller*, 243 Or App 423, 430, 259 P3d 976 (2011) (so stating for ORCP 46 D); *Elliott v. Progressive Halcyon Ins. Co.*, 222 Or App 586, 595, 194 P3d 828 (2008), *rev den*, 346 Or 65; 346 Or 157 (2009) (so stating for ORCP 46 C). ORCP 46 A(4) provides that if a motion to compel discovery is granted, the court may award attorney fees, "unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust." The trial

court found that the consultants were hired to investigate the root cause of the outbreak, not to provide expert advice for litigation purposes, and cited evidence from the record to support that finding. It therefore determined that what the "two consultants saw, did, and recommended and why they did so is, of course, subject to discovery." Because it was legally permissible to conclude that Lloyd's London's complete opposition to any discovery related to their consultants was not substantially justified, the trial court did not abuse its discretion in awarding attorney fees as a sanction. *See Gwin v. Lynn*, 344 Or 65, 67, 176 P3d 1249 (2008) ("[W]e hold that a witness may be both an expert witness and a fact witness and, therefore, may be deposed concerning facts that pertain to the witness's direct involvement in or observation of the relevant events that are personally known to the witness and that were not gathered primarily for the purpose of rendering an expert opinion.").

Affirmed.